RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0059p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

GENCORP, INC.,

*Plaintiff-Appellant,*

*v.*

No. 05-4439

OLIN CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio.
No. 93-02269—David S. Perelman, Magistrate Judge.

Argued: December 6, 2006

Decided and Filed: February 12, 2007

Before: SUTTON and GRIFFIN, Circuit Judges; COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael L. Hardy, THOMPSON HINE, Cleveland, Ohio, for Appellant. Peter Buscemi, MORGAN, LEWIS & BOCKIUS, Washington, D.C., for Appellee. **ON BRIEF:** Michael L. Hardy, Brian A. Troyer, Anthony J. Rospert, THOMPSON HINE, Cleveland, Ohio, for Appellant. Peter Buscemi, Ralph N. Albright, Jr., Thomas J. O'Brien, Wade B. Wilson, MORGAN, LEWIS & BOCKIUS, Washington, D.C., for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. After a protracted trial and an unsuccessful appeal to this court, GenCorp filed a Rule 60(b)(6) motion asking the district court to set aside a judgment in favor of Olin Corporation on the basis of *Cooper Industries v. Aviall Services, Inc.*, 543 U.S. 157 (2005). GenCorp also asked the district court to stay execution of the judgment. The district court denied both motions. We affirm.

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

In the 1960s, GenCorp and Olin built a chemical-processing plant in Ohio and stored the hazardous waste generated by the plant at two different sites. Although the agreement between the companies originally contemplated placing the plant under GenCorp's sole control, Olin ultimately retained ownership of the plant. In 1985, the Environmental Protection Agency (EPA) notified Olin that it was a "potentially responsible party" under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) for the clean-up of "Big D," one of the two disposal sites. After negotiations failed, the EPA issued two unilateral administrative orders under CERCLA § 106, 42 U.S.C. § 9606—one for each site. The orders established "remedial design and remedial action" plans for the sites and required Olin to comply with them. JA 167. The government also brought a civil action against Olin under CERCLA § 107, 42 U.S.C. § 9607, seeking "reimbursement of the response costs which it ha[d] incurred in conducting a response action" at Big D. JA 281. In addition, the complaint asked for a declaratory judgment that Olin would "be liable for all future costs incurred by the United States . . . in conjunction with the response activities at the Big D Campground Site." JA 286.

This action began in 1993 when GenCorp requested a declaratory judgment disclaiming any CERCLA liability for the clean-up costs of the sites. Olin counterclaimed, seeking contribution for its response costs under CERCLA § 113(f), 42 U.S.C. § 9613(f), and arguing that GenCorp should be jointly and severally liable for the response costs under CERCLA § 107(a), *id.* § 9607(a). In 1995, GenCorp agreed to dismiss its declaratory judgment action, after which the parties litigated Olin's counterclaims. GenCorp also amended its response to Olin's counterclaim, adding the claim that Olin had breached its contract to insure the plant.

The district court eventually dismissed Olin's claim for joint and several liability under § 107, reasoning that as a potentially responsible party Olin's recourse lay in the contribution provision of CERCLA § 113(f). *See Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 356 (6th Cir. 1998). The district court then held a bench trial and ruled for Olin on its contribution claim on May 9, 2002. The district court concluded that GenCorp was responsible for 30% of the clean-up costs of Big D and 40% of the costs for the other site, leading to a judgment against GenCorp (and in favor of Olin) for $19 million in contribution costs and $9.7 million in prejudgment interest.

GenCorp asked the court to reconsider its decision based on "the plain language of § 113(f)(1)," arguing that a potentially responsible party like Olin could seek contribution only "during or following any civil action" under CERCLA § 106 or § 107. JA 257; 42 U.S.C. § 9613(f)(1). Claiming that Olin had not been subject to such a civil action, GenCorp argued that "[t]he express language of the statute bars Olin's contribution claim." JA 257. GenCorp acknowledged that the Sixth Circuit had not confronted the issue before and that district courts had taken conflicting positions on it. GenCorp also noted that the Sixth Circuit case most on point—*Centerior*—"did not undertake to define the scope and limits of the contribution action itself," JA 259, and that the Fifth Circuit had recently issued a decision favoring GenCorp's interpretation of section 113(f)(1), *see Aviall Servs., Inc. v. Cooper Indus.*, 263 F.3d 134, 137 (5th Cir. 2001). The district court rejected GenCorp's motion. It noted that the Fifth Circuit had since vacated and reversed the panel decision, *see Aviall Servs., Inc. v. Cooper Indus., Inc.*, 312 F.3d 677 (5th Cir. 2002) (en banc), and reasoned that the final sentence of section 113(f)(1) assured that potentially responsible parties could proceed with contribution claims even in the absence of a civil action. *See* 42 U.S.C. § 9613(f)(1).

After rejecting GenCorp's motion for reconsideration, the district court entered a final judgment for Olin on its contribution claim under Civil Rule 54(b). The district court stayed

consideration of GenCorp's breach-of-contract claim pending the resolution of a dispute between Olin and its insurers in the District Court for the Southern District of New York.

On appeal, GenCorp did not raise the issue presented in its motion for reconsideration. Our court rejected the issues that GenCorp did present on appeal and ultimately affirmed the judgment with one reservation. *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433 (6th Cir. 2004). We held that the statutory language of CERCLA § 113(g)(2) required a district court to enter a declaratory judgment as to future costs if a claimant succeeds in a contribution suit, but that such a judgment necessarily was limited by Article III's "case or controversy" requirement. *Id.* at 451. "[U]nable to find sufficient evidence of future response costs," we remanded the case to the district court "for initial consideration of whether a 'case or controversy' exists, and if so, for the entry of a declaratory judgment." *Id.*

After the Sixth Circuit issued its decision on November 22, 2004, GenCorp petitioned for rehearing en banc. At that point, it pressed the "civil action" argument for the first time in the court of appeals, noting that the Supreme Court had granted certiorari to the Fifth Circuit on the question. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 540 U.S. 1099 (2004). On December 13, 2004, the Supreme Court announced its decision in *Cooper Industries*, 543 U.S. 157, holding that § 113(f)(1) authorized contribution actions only when the claimant had been subject to a "civil action" under sections 106 or 107. Our court thereafter denied GenCorp's petition for rehearing en banc, and the Supreme Court thereafter denied GenCorp's petition for a writ of certiorari, *GenCorp, Inc. v. Olin Corp.*, 126 S. Ct. 420 (2005).

On remand, GenCorp filed a Rule 60(b)(6) motion asking the district court to set aside the judgment based on the Supreme Court's decision in *Cooper Industries* and filed a Rule 62(h) motion asking the court to stay execution of the underlying judgment against it. The district court denied both motions on November 3, 2005. GenCorp asked this Court to stay execution of the judgment pending appeal, which this Court denied on November 18. On November 21, GenCorp satisfied the judgment, and five days later the district court discharged the supersedeas bond. GenCorp appeals the district court's orders denying its Rule 60(b)(6) and Rule 62(h) motions.

II.

We review the denial of both motions for abuse of discretion. *See Browder v. Director, Dep't of Corr.*, 434 U.S. 257, 263 n.7 (1978); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 408–09 (6th Cir. 2003). That standard is met, we have held, when we have a "definite and firm conviction that the trial court committed a clear error of judgment." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal quotation marks omitted).

A.

When a district court enters a judgment, the Federal Rules give the losing party several types of recourse: The party may ask the court to amend its findings or make additional findings, *see* Fed. R. Civ. P. 52(b); it may seek a new trial, *see* Fed. R. Civ. P. 59(a); it may seek to alter or amend the judgment, *see* Fed. R. Civ. P. 59(e); and it may file an appeal of right, *see* Fed. R. App. P. 4(a).

Even after a judgment has become final and even after an appeal has been lost, Civil Rule 60(b) gives losing parties additional, narrow grounds for vacating the judgment:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a

> prior judgment upon which it is based has been reversed or otherwise vacated, or it
> is no longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

Most of the grounds for relief relate to, if not require, new information about the case that could not reasonably have been discovered earlier. *See, e.g.*, *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996); *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844–46 (6th Cir. 1983). And the "public policy favoring finality of judgments" limits the availability of relief under the rule. *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). That "is especially true in an application of subsection (6) of Rule 60(b), which applies 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.'" *Blue Diamond*, 249 F.3d at 524 (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)); *see Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir. 1983). "There must be an end to litigation someday," the Supreme Court has cautioned, "and free, calculated, deliberate choices are not to be relieved from," *Ackermann v. United States*, 340 U.S. 193, 198 (1950)—suggesting that relief under Rule 60(b)(6) should be granted "only in 'unusual and extreme situations where principles of equity *mandate* relief,'" *Blue Diamond*, 249 F.3d at 524 (quoting *Olle*, 910 F.2d at 365).

A Rule 60(b) motion is neither a substitute for, nor a supplement to, an appeal. *See Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989) ("The parties may not use a Rule 60(b) motion as a substitute for an appeal or as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise.") (citations omitted); *see also, e.g.*, *Cotto v. United States*, 993 F.2d 274, 278 (1st Cir. 1993); *Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964); *Kock v. Gov't of V.I.*, 811 F.2d 240, 246 (3d Cir. 1987); *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993); *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993); *Swam v. United States*, 327 F.2d 431, 433 (7th Cir. 1964); *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997); *Perrin v. Aluminum Co. of America*, 197 F.2d 254, 255 (9th Cir. 1952); *Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir. 1979); *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 840–41 (11th Cir. 1982); *Laffey v. Nw. Airlines, Inc.*, 642 F.2d 578, 583 n.46 (D.C. Cir. 1980). For this reason, arguments that were, or should have been, presented on appeal are generally unreviewable on a Rule 60(b)(6) motion. *See Hopper*, 867 F.2d at 294; *Pierce v. UMWA Welfare & Retirement Fund*, 770 F.2d 449, 451–52 (6th Cir. 1985); *Steinhoff v. Harris*, 698 F.2d 270, 275 (6th Cir. 1983). And for related reasons, "an appeal from [the] denial of Rule 60(b) relief does not bring up the underlying judgment for review." *Browder*, 434 U.S. at 263 n.7.

Even "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *see Blue Diamond*, 249 F.3d at 524. "Instead, courts have relied on an applicable change in decisional law, coupled with some other special circumstance, in order to grant Rule 60(b)(6) relief." *Blue Diamond*, 249 F.3d at 524.

Gauged by these precedents, the district court correctly rejected GenCorp's Rule 60(b)(6) motion. *First*, as we have shown, a Rule 60(b)(6) motion is not a substitute for an appeal and, it follows, may not be invoked to resurrect a waived argument. Before the first appeal in this case, GenCorp recognized that the "civil action" issue implicated by § 113(f)(1)—the issue the Supreme Court resolved in *Cooper Industries*—could come into play in this case. In a motion for reconsideration in the district court, GenCorp raised the issue, argued that the statute's plain language barred Olin's contribution action and relied on the Fifth Circuit's initial panel decision in *Cooper Industries* in making the point. The district court rejected the motion on the merits, relying in part on the Fifth Circuit's subsequent *en banc* decision in *Cooper Industries*. In its notice of appeal, GenCorp raised the "civil action" issue under § 113(f)(1) as one of its arguments on appeal.

Yet, as GenCorp acknowledges, it opted not to present this issue in its written or oral appellate arguments and thus waived appellate consideration of the argument. *See Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995) ("We ordinarily consider issues not fully developed and argued to be waived."); *Raydure v. Lindley*, 268 F. 338, 341 (6th Cir. 1920). Having waived the "civil action" argument on its first appeal, GenCorp cannot retrieve it under Rule 60(b)(6).

*Second*, one of the potential predicates for Rule 60(b)(6) relief—an intervening change in the law (when "coupled with some other special circumstance," *Blue Diamond*, 249 F.3d at 524)—does not apply here. Before *Cooper Industries*, neither the Supreme Court nor the Sixth Circuit had examined whether contribution actions under § 113 were available in the absence of a civil action. As GenCorp acknowledged when it first raised the issue in the district court, no binding precedent existed on the point and only a smattering of district courts (along with the Fifth Circuit) had directly confronted the issue. *See* JA 259 ("Case law in the district courts is divided on the question."). *Compare, e.g.*, *Aviall Servs.*, 312 F.3d at 691 (5th Cir. 2002) (en banc) (finding no "civil action" requirement); *and Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 208 (D. Conn. 2001) (same), *with Rumpke of Ind., Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1241 (7th Cir. 1997) (noting in dicta that "a § 106 or § 107(a) action apparently must either be ongoing or already completed before § 113(f)(1) is available"); *and Estes v. Scotsman Group, Inc.*, 16 F. Supp. 2d 983, 989 (C.D. Ill. 1998) (finding a "civil action" requirement).

Accordingly, when GenCorp took its first appeal, there was no controlling authority in the Sixth Circuit on the issue—just a handful of cases from other jurisdictions pointing in different directions. When the Supreme Court issued its decision in *Cooper Industries*, it thus did not alter controlling authority in this circuit. This is not a case, in short, in which the appellant chose not to challenge a controlling proposition of Sixth Circuit law—only to learn after the appeal that the Supreme Court had chosen to reverse that controlling authority.

The intervening-change-in-law exception to our normal waiver rules, by contrast, exists to protect those who, despite due diligence, fail to prophesy a reversal of established adverse precedent. *See Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 143 (1967); *Polites v. United States*, 364 U.S. 426, 433 (1960); *see also Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981) ("The clairvoyance demanded by plaintiff here . . . is inconsistent with the doctrine of waiver."). A party faced with a hoary precedent thus might be forgiven for not challenging it, as might a party who abandons an issue at oral argument in light of intervening, controlling authority, *see Overbee*, 765 F.2d at 580. Unlike a litigant faced with adverse, binding precedent, however, GenCorp faced no obstacle that would have prevented fresh review of the "civil action" issue on appeal, and yet GenCorp limited its appellate argument to other issues. Whether GenCorp's choice was unwise or not, Rule 60(b)(6) does not exist to assist informed and presumptively strategic decisions on appeal. Indeed, having denied Rule 60(b)(6) relief to parties that have asserted the (ultimately successful) argument at every stage of review without success, *see Blue Diamond*, 249 F.3d at 524, it follows that we should deny relief to parties that, without justification, do not even present the (ultimately successful) argument on appeal.

*Third*, even if GenCorp did not face these two impediments to Rule 60(b)(6) relief, it faces another obstacle: *Cooper Industries* by no means establishes that GenCorp would prevail. This is not a case, in other words, in which the new decision plainly forecloses the relief obtained by the prevailing party in the judgment under attack. In *Cooper Industries*, it was "undisputed that [the plaintiff] ha[d] never been subject" to a civil action under CERCLA § 106 or § 107. 543 U.S. at 168. The Court noted that it "need not decide whether [a unilateral administrative order under section 106] would qualify as a 'civil action.'" *Id.* at 168 n.5. Here, by contrast, Olin was subjected to several unilateral administrative orders issued by the EPA under CERCLA § 106, and before Olin began cleaning the sites the government filed a complaint—what might be characterized as a "civil action"—against Olin under CERCLA § 107, requesting compensation "for all response costs,

including the costs of removal and remedial actions, administrative and enforcement costs, and interest." JA 286. Although we need not decide whether GenCorp would have failed had it raised the "civil action" argument, the fact remains that *Cooper Industries* hardly preordains the outcome. The very circumstance reserved by the Supreme Court for later decision—whether a unilateral administrative action could qualify as a civil action—was not decided and thus could not control the outcome in this case. And it remains to be seen whether the government's lawsuit against Olin—an issue also not presented in *Cooper Industries*—would nonetheless have qualified as a "civil action."

GenCorp persists that *Cooper Industries* caused a "dramatic change in the CERCLA landscape" and that "[c]ommentators have universally described" it as such. Rep. Br. at 9. "[T]he district court followed uniform pre-*Cooper Industries* precedent," it adds, and Olin prevailed in the district court only because it argued that Sixth Circuit precedent, *see Centerior Serv. Co. v. Acme Scrap Iron & Metal Co.*, 153 F.3d 344 (6th Cir. 1998), controlled the outcome. *See* Rep. Br. at 9–10. Doubtless, *Cooper Industries* changed the law in the circuits that had addressed the issue (and come out the other way). The problem is, this court of appeals was not one those circuits. As GenCorp acknowledges, the "civil action" issue was an open question in this circuit and *Centerior* "did not hold that [potentially responsible parties] may seek contribution in the absence of a civil action." Rep. Br. at 10. Nor can GenCorp tenably maintain that there was "uniform" authority going the other way before *Cooper Industries*. GenCorp acknowledged in the district court that the courts were "divided on the question." JA 259 n.6.

*E.I. Dupont De Nemours & Co. v. United States*, 460 F.3d 515 (3d Cir. 2006), also does not advance GenCorp's position. For one, it acknowledged that "*Cooper Industries* raised legal questions [appellant] had no reason to ask before that decision." *Id.* at 528 n.17. That is not the case here because GenCorp *did* raise the "civil action" issue in the district court and in its notice of appeal, then abandoned the issue on appeal. For another, the Supreme Court decided *Cooper Industries* before the Third Circuit issued its decision in *E.I. Dupont*, making the interests in finality less compelling in that case.

GenCorp next argues that the "civil action" argument was within the scope of the district court's mandate on remand. Br. at 28–31. Not so. In deciding GenCorp's first appeal, the Sixth Circuit remanded only a "jurisdictional issue to the district court for initial consideration of whether a 'case or controversy' exists, and if so, for the entry of a declaratory judgment for future response costs." *GenCorp*, 390 F.3d at 451. A "common sense" reading of the mandate, *see Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997), shows that the district court had just one issue before it: Did it have constitutional authority to enter a declaratory judgment on Olin's behalf regarding future response costs? Given that the "civil action" issue has nothing to do with whether a case or controversy exists, it lies beyond the scope of the mandate.

GenCorp further argues that the "civil action" requirement is jurisdictional and thus cannot be waived. Rep. Br. at 8 n.4. But the company gives us no indication that Congress perceived this requirement as jurisdictional in nature. *See Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."). And even in the one decision it cites, *CadleRock Properties Joint Venture v. Schilberg*, No. 3:01CV896, 2005 WL 1683494 (D. Conn. July 19, 2005), the district court held only that the *Declaratory Judgment Act* did not create jurisdiction absent a valid claim under CERCLA, *id.* at *9.

B.

GenCorp next argues that the district court abused its discretion in declining to stay execution of the judgment pending the resolution of its Rule 60(b)(6) motion. Shortly after denying GenCorp's Rule 62(h) stay motion, GenCorp satisfied the underlying judgment and the district court

discharged GenCorp's supersedeas bond. Just as we cannot enjoin a levy that already has been satisfied, *see Hall v. United States*, 749 F.2d 373, 373 (7th Cir. 1984); *FDC Mach. Repair, Inc. v. United States*, No. 1:96-CV-0088, 1996 WL 196700, at *2 (N.D. Ohio Feb. 6, 1996), we cannot stay the execution of a judgment that already has been executed. Indeed, GenCorp has not revealed (nor have we found) any authority suggesting that issuing a stay would dislodge the funds from Olin's grasp. Because issuing a stay now would be a futile exercise of our equitable powers, GenCorp's appeal on this point is moot.

III.

For these reasons, we affirm.