**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0569n.06

No. 09-4274

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 30, 2010**
LEONARD GREEN, Clerk

CLIFF R. PORTER,                                  )
                                                  )
    **Plaintiff-Appellant,**                      )       ON APPEAL FROM THE
                                                  )       UNITED STATES DISTRICT
v.                                                )       COURT FOR THE SOUTHERN
                                                  )       DISTRICT OF OHIO
CITY OF COLUMBUS DIVISION                         )
OF POLICE, et al.,                                )
                                                  )       **O P I N I O N**
    **Defendants-Appellees.**                     )
_____        )

**Before: GUY, MOORE, and GRIFFIN, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Cliff R. Porter appeals from the grant of

summary judgment in his § 1983 action to the City of Columbus Division of Police ("CPD") and the

other individual CPD defendants in their official capacities (collectively, "Defendants"). Porter

alleges that the individual defendants, in line with the CPD's policies, practices, and customs,

deprived him of his association and due process rights, in violation of the First and Fourteenth

Amendments, when they terminated his volunteer position as an Associate Advisor for the CPD-

sponsored Columbus Division of Police Law Enforcement Explorer Post ("Explorer Post"), a career-

education program operated by a subsidiary of the Boy Scouts of America ("BSA"), and allowed his

name to expire from the CPD officer-eligibility list. Porter further appeals from the district court's

denial of his Federal Rule of Civil Procedure 60(b)(6) motion, asserting that the district court should

have reversed its denial of leave to amend his complaint to include individual-capacity claims under the continuing-violations exception to the statute of limitations for § 1983 claims.

## I. BACKGROUND FACTS & PROCEDURE

Porter became a member of the Explorer Post in August 1999 shortly after his eighteenth birthday. Although the CPD is the sponsoring organization, the Explorer Post is a separate non-profit organization operated by the Learning for Life organization, a subsidiary of the BSA. Explorer Posts operate as career-education programs for youths between the ages of fourteen and twenty-and-one-half, and the CPD-sponsored Explorer Post focuses on law-enforcement careers. The CPD organizational chart does not include its Explorer Post, but the Explorer Post has an established "Constitution and By-Laws" and "Rules and Regulations." Based on historical practice, the CPD considered its Explorer Post to come under the purview of the CPD's Training Bureau.

In August 2002, after he aged out of membership eligibility for the Explorer Post, Porter began to volunteer as a civilian Associate Advisor, a position that is appointed by the Post Advisor (who must be a police officer). According to the CPD Explorer Post Rules and Regulations,

> Associate Advisors must be at least 18 years of age and may be chosen from the senior members of the post. They are appointed by the Post Advisor who shall also prescribe the duties of the Associate Advisors. Whenever possible, Associate Advisors should have some affiliation with any police department within Franklin County.

Doc. 2-1 (Compl. Ex. A at 5). Porter was appointed by his personal friend and then-Post Advisor, CPD Officer Mark Frontera. An Associate Advisor is not a "post officer" as defined in the Explorer Post's Constitution and By-Laws, which explain the "Duties of Post Officers" and the removal procedures for "post officers." *Id.* at 2–4.

2

On or about December 14, 2004, at an Explorer Post meeting, the Post Captain delivered an order from CPD Lieutenant Robert Meader, a Training Bureau officer, that no Explorer Post members or leaders were to have contact with Frontera. The CPD's Internal Affairs Bureau ("IAB") contacted Porter the next day to schedule an interview as part of its investigation into allegations that Frontera had engaged in misconduct related to his duties as the Explorer Post's Post Advisor. CPD Sergeants Joseph Bachman and Mark Rapp interviewed Porter on December 17 and informed him that if he failed to cooperate with the investigation, it would be considered insubordination and he would be removed from further involvement with the Explorer Post. They also ordered Porter not to have any contact with current or former Explorer Post members or with Frontera regarding the investigation. At some point during the interview, Rapp also asked Porter if he was currently trying to join the CPD. (At least twice during his association with the Explorer Post, Porter had applied with the City of Columbus Civil Service Commission ("CCSC") to become a CPD Police Radio Communication Technician and a Police Officer. He had most recently applied for appointment as an officer in 2003, filing an application and Abbreviated Background Questionnaire and completing the required examination.) Meader, Bachman, and Rapp all testified in their depositions in this case that they did not convey any information about Porter's involvement in the investigation to the CPD Personnel Bureau.

At the February 7, 2005, Explorer Post meeting, Meader delivered a letter to Porter stating that "effective immediately, your status as a Columbus Division of Police Explorer in which you have served or been granted participation in any capacity, real or perceived, is hereby terminated." Doc. 39-2 (Pl. Summ. J. Response, Ex. B). The letter, signed by Meader, further stated,

> This letter is also to serve as notice that you are not to trespass on City of Columbus and/or Division of Police property due to your expulsion as a Columbus Police

3

Explorer. Because you have been removed as a Columbus Police Explorer any unwanted phone calls to active Columbus Police Explorers may have criminal culpability which could result in charges being filed against you.

*Id.* The following day, Porter filed a citizen complaint against Meader, Bachman, and Rapp, which was later re-classified as "information only." Doc. 2 (Compl. at ¶¶ 43, 45). Porter's appeal of this re-classification in May 2005 was denied. At his deposition, Meader testified that, aside from his position with the Training Bureau, he could not identify a CPD directive or standard that provided authority to remove Porter from his volunteer position. Although neither of the Explorer Post's governing documents include removal procedures for the Associate Advisor position, BSA Scout Executive Ronald Green, whose "responsibilities include but are not limited to the selection, approval and maintenance of standards for all adult volunteer leaders," stated in his affidavit that "[e]ither the Boy Scouts or the sponsoring organization [the CPD] may remove an adult volunteer at any time with or without cause." Doc. 40-1 (Def. Summ. J. Reply, Ex. B at 2).

In June 2005, Porter contacted the CCSC about his police officer application status, but he "learned that his name had expired from the eligibility list." Doc. 2 (Compl. at ¶ 50). According to an affidavit by Lieutenant William Gramlich with the CPD Personnel Administration Section, names may remain on the eligibility list for two years. Applicants who pass the examination are placed into three "bands" according to their scores, and, according to CCSC rules, if the appointing authority chooses to fill positions it must select candidates from the first two bands before considering applicants in the lowest band. Gramlich stated that Porter's disclosures on his Personal History Questionnaire coupled with his placement in the lowest scoring band caused Gramlich to decide not to process further Porter's application in March 2004. Neither the CPD nor the CCSC ever communicated this information to Porter.

4

On December 15, 2006, Porter filed the instant suit against the CPD and the individual defendants, all current or former CPD police officers of various ranks, alleging violations of his First and Fourteenth Amendment rights under 42 U.S.C. §§ 1983 and 1985 based on state action in accordance with the CPD's policies or customs. Porter's allegations attacked the orders from Meader, Bachman, and Rapp to comply with the IAB investigation or risk insubordination, not to have contact with present or past CPD Explorer Post members, and not to trespass on City or CPD property due to his expulsion from Explorer Post membership, and also raised claims related to the alleged chain of events surrounding his removal from the eligibility list for a CPD officer position and the procedures that the IAB employed in its investigation of Frontera. The Defendants filed an answer and then moved for judgment on the pleadings. In response, Porter successfully moved to amend his complaint to add factual support for his claims, but the district court denied leave to add individual-capacity claims on the grounds that the allegedly unconstitutional orders were not continuing violations and the amendment would not relate back to cure statute-of-limitations problems. The district court in the same order partially granted the Defendants' motion for judgment on the pleadings, concluding that Porter's amended complaint failed to plead sufficiently an alleged § 1985 conspiracy but that Porter's § 1983 claims against the CPD and the individual defendants in their official capacities were pleaded sufficiently to survive the motion.

After discovery, the Defendants moved for summary judgment on Porter's remaining § 1983 claims, asserting that Porter had failed to identify or establish a CPD policy, practice, or custom that caused a constitutional violation. The district court granted the motion, concluding that Porter failed to support his allegations of constitutional violations and that, even if he was able to demonstrate that the Defendants violated his constitutional rights, Porter had not established that the CPD had a

custom, policy, or practice in place that caused the violation. Porter then filed a Federal Rule of Civil Procedure 59(e) motion to reconsider the district court's summary-judgment opinion and a Rule 60(b)(6) motion for relief from both that order and the district court's earlier ruling denying leave to amend his complaint to add individual-capacity claims. The district court denied both motions, concluding for the former that Porter sought only to relitigate the issues decided already and for the latter that the Lilly Ledbetter Fair Pay Act of 2009 did not alter the court's rejection of Porter's continuing-violation allegation. Porter now timely appeals from the district court's orders granting summary judgment and denying the post-trial motions.

## II. DISCUSSION

**A. Summary Judgment Standard of Review**

We review de novo a district court's summary judgment decision. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373 (6th Cir. 2009). As we have explained:

> "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted). In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)."

*Biegas*, 573 F.3d at 374 (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).

Once the moving party has satisfied his or her burden, "[t]he respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

6

U.S. 574, 586 (1986)). "[T]he party opposing the motion . . . may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street*, 886 F.2d at 1479).

Porter has narrowed his arguments on appeal to focus on his § 1983 First Amendment association-rights claim and his Fourteenth Amendment claim related to the deprivations of liberty and property without due process, as well as the district court's denial of his Rule 60(b)(6) motion. Porter's § 1983 claims against both the individual defendants in their official capacities and against the CPD must satisfy the standard for municipal liability—he must establish first that he was deprived of a constitutional right and second that this occurred as a result of state action. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). "The United States Supreme Court has held that municipalities may be held liable under § 1983 when the injury inflicted is a result of 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Radvansky*, 395 F.3d at 311 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The tortious actions of a single officer cannot form the basis for municipal liability unless that officer had policymaking authority. *Id.* In addition, "there must be a direct causal link between the policy and the alleged constitutional violation such that the municipality's deliberate conduct can be deemed the moving force behind the violation." *Id.* (internal quotation marks and alteration omitted).

7

### 1. Existence of Genuine Issues of Material Fact

Porter asserts first that the CPD's authority to remove him from his Explorer Post position is a genuine issue of material fact that precludes summary judgment on all of his constitutional claims. The district court found that Meader had undisputed authority to remove Porter based on Green's explicit affidavit statement that *either* Learning for Life *or* the sponsoring organization—here, the CPD—may remove an adult volunteer leader and based on Meader's deposition testimony that the CPD's Training Bureau had supervisory authority. We conclude that Porter has not "ma[d]e an affirmative showing with proper evidence" that the CPD's authority presents a genuine issue of material fact. *Alexander*, 576 F.3d at 558.

Contrary to Porter's argument, the district court did not need to engage in any evidence weighing or credibility determinations to conclude that the record supported the CPD's authority to remove Porter from his voluntary Explorer Post position, and Porter has not pointed this court to evidence that would undermine the district court's statement of facts. Porter relies on a perceived contradiction between (1) what the district court relied upon, and (2) CPD Chief James Jackson's testimony that the Explorer Post is not technically part of the CPD and statements in the Explorer Post's Constitution and By-Laws and Rules and Regulations describing the Associate Advisor position and the removal procedures for "post officers." Although "we must assume the truth of the non-moving party's evidence and construe all inferences from that evidence in the light most favorable to the non-moving party," *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006), these items do not actually contradict that the CPD, through its Training Bureau, had authority to remove Porter from the Associate Advisor position. Neither Green nor the district court disputed that the Explorer Post was a separate organization that was merely an affiliate of the CPD as its sponsoring

8

organization.  We agree with Porter that neither the Constitution and By-Laws nor the Rules and Regulations "provide explicit guidance for disciplining or removing Associate Advisors," Appellant Br. at 12, but the inference that the Post Advisor would then be the only position with authority to remove the Associate Advisor is not the only reasonable inference.  The additional facts that the district court relied upon—and that Porter does not actually contradict—show that the CPD had the authority to remove the Associate Advisor and negate any reasonable inference of a lack of authority that could give rise to a genuine issue of material fact.

## 2. State Action for Municipal Liability:  CPD Polices, Practices, or Customs

To expedite our analysis of his appeal, we will assume without deciding that Porter would be able to establish that the orders and exclusion letter violated his First Amendment rights.[1]  This is insufficient to survive summary judgment, however, because Porter has not provided this court with evidence to support that the state action underlying the violations rises to the level of an actionable municipal "custom."  "[F]or [Porter] to demonstrate municipal liability, he must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire*, 330 F.3d at 815.  Porter contends that the CPD had a "policy, custom and practice of having an undefined nexus between [the] CPD and the Explorer Post [that] allowed the CPD Training Academy to exercise control over the Explorer Post without authority to do so" and a "policy, custom and practice of allowing the

---

[1]Porter has not challenged the district court's basis for granting summary judgment to the Defendants on his Fourteenth Amendment due-process claim.  Instead, Porter has attempted to assert for the first time on appeal entirely new bases for a Fourteenth Amendment violation.  "Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal." *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1172 (6th Cir. 1996).  For this reason, we will not even assume that Porter can establish a violation of his Fourteenth Amendment rights because he has waived consideration of the district court's grant of summary judgment on that issue.

9

Training Academy to exercise state action without authority with regard to the Explorer Post."
Appellant Br. at 14.

Because Porter has not pointed this court to evidence of an "officially adopted and promulgated" municipal policy, we will address his contention as a "custom." *See Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). "An actionable 'custom,' in contrast [to a policy], 'has not received formal approval through . . . official decisionmaking channels.' A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." *Id.* (quoting *Monell*, 436 U.S. at 690–91). As we have explained,

> A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano*, 988 F.2d at 655.

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507–08 (6th Cir. 1996).

Porter argues that his repeated protests to Meader and to the CPD IAB investigators that Meader did not have authority with regard to the Explorer Post, and specifically concerning the removal of Associate Advisors, constitute evidence of the alleged custom. The fact that is most fatal to Porter's claimed custom is that the record supports that the Training Bureau did have the authority to remove Porter from his volunteer Associate Advisor position and that the CPD historically supervised the Explorer Post through its Training Bureau. Even with that authority and practice of supervision, we acknowledge that Porter could have a claim that the CPD had a custom of being

10

indifferent to how the Training Bureau exercised that authority. However, not only has Porter not attempted to pursue that reasoning, but also the isolated instances of indifference—indulging the inference that the IAB's treatment of Porter's complaints amounted to official indifference—do not rise to the level of a "'[d]eeply embedded traditional way[] of carrying out state policy.'" *Id.* (quoting *Browning*, 310 U.S. at 369) (first alteration in original). Although "[a] single act by a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered' may suffice in demonstrating that policy or custom," *Cady v. Arenac County*, 574 F.3d 334, 345 (6th Cir. 2009) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)), "where the policy [or custom] relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation," *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality opinion); *see also Adair v. Charter County of Wayne*, 452 F.3d 482, 493 (6th Cir. 2006) (explaining the requirements for finding a "final policymaker"); *Radvansky*, 395 F.3d at 311 ("By itself, 'the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy.'" (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992))). Porter has not attempted to make this showing. We conclude that, even when viewed in the light most favorable to Porter, the evidence that Porter relies upon is insufficient to establish an actionable "custom" or to create a genuine issue of material fact as to whether the CPD had such a custom.

## B. Post-Trial Rule 60 Motion: Application of the Lilly Ledbetter Fair Pay Act of 2009

Porter argues that the district court erred in denying his Rule 60(b)(6) motion for relief from the court's earlier ruling denying him leave to amend his complaint because the Lilly Ledbetter Fair

11

Pay Act of 2009 ("LLA") expanded the continuing-violations doctrine such that the individual-capacity claims that he sought to add to his complaint would not be time barred. We review for abuse of discretion a district court's denial of a Rule 60(b)(6) motion for relief from judgment, and we "will reverse only when [we are] firmly convinced that a mistake has been made." *ACLU v. McCreary County, Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (internal quotation marks omitted). Thus, "a party must demonstrate that the district court committed a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Id.* (internal quotation marks omitted). "'[A]n appeal from [the] denial of Rule 60(b) relief does not bring up the underlying judgment for review.'" *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007). Instead, we may determine only "whether one of the specified circumstances exists in which [Porter] is entitled to reopen the merits of his underlying claims." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 543 (6th Cir.), *cert. denied*, 543 U.S. 837 (2004). We conclude that the district court did not abuse its discretion in determining that Porter is not entitled to Rule 60(b)(6) relief based on the LLA because the claims he sought to include are not within the purview of the LLA—his First and Fourteenth Amendment claims are in no way related to discrimination in employment, compensation-related or otherwise, under Title VII, the ADEA, the ADA, or the Rehabilitation Act. *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009). The district court recognized that a change in the law could support Rule 60(b)(6) relief, but it determined that Porter's proposed claims would not benefit from the LLA and denied the motion. This was not an abuse of discretion in this case.

### III. CONCLUSION

For the above reasons, we **AFFIRM** both the district court's grant of summary judgment to the Defendants and its denial of Porter's Rule 60(b)(6) motion.