NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0088n.06

Case No. 25-3378

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 19, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| BEN GEORGES RAYES, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| PAMELA BONDI, Attorney General, | ) | APPEALS |
| Respondent. | ) | |
| | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; GRIFFIN and NALBANDIAN, Circuit Judges.

SUTTON, Chief Judge. Ben Rayes entered the United States from Iraq in 1979, applied for citizenship, and became a citizen in 2010. In 2013, he was convicted of an aggravated crime of violence, which led to a five-year prison sentence. In 2015, the district court revoked his citizenship through a plea agreement, and the Department of Homeland Security, after a round of removal proceedings, removed him to Iraq in 2019. Rayes filed two motions to reopen his case with the Board of Immigration Appeals, each unavailing. In 2024, Rayes filed a third motion with the Board to reopen his case. The Board denied the motion as untimely. We deny Rayes's petition for review with respect to his third motion.

I.

A native of Iraq, Rayes was admitted to the United States as a refugee in June 1979. He received lawful permanent status in March 1981 and citizenship in December 2010.

The naturalization process required Rayes to affirm that he had not knowingly committed any crime for which he had avoided arrest. But four years before Rayes became naturalized, he took part in a fraudulent scheme to set fire to a residence and collect the insurance proceeds. The transgression came to light, and, in February 2013, a district court convicted Rayes of using fire to commit fraud in 2006 in violation of 18 U.S.C. § 844(h)(1). It sentenced him to five years. In October 2015, the court also revoked Rayes's citizenship in connection with the plea agreement between him and the government.

In June 2016, an immigration judge concluded that the felony conviction rendered Rayes removable as an "alien who is convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). Then Rayes sought to defer his deportation under the Convention Against Torture, arguing that he faced persecution from ISIS because he is a Chaldean Christian. But in December 2016, the Board of Immigration Appeals denied his request because Rayes could not prove that the Iraqi government would be responsible for any such threats. Rayes did not petition this court for review of the Board's decision.

In June 2017, Rayes filed his first motion to reopen the Board proceedings, claiming that changed country conditions warranted relief. That was six months after the Board entered its final order of removal and thus three months late. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). The Board rejected the motion, reasoning that Rayes had not shown any material changes in Iraq since his final hearing in June 2016. Rayes did not file a petition for review.

In May 2018, roughly 18 months after the Board entered its final order of removal, Rayes filed a second motion to reopen based on changed country conditions, ineffective assistance of counsel, and a change in law. The Board rejected the motion as untimely and number-barred and

ruled that no statutory or equitable exception excused the late filing. Rayes did not file a petition for review.

In December 2019, the government removed Rayes to Iraq, where he currently lives.

Rayes filed his third motion to reopen in October 2024. He argued that his aggravated felony conviction, which he incurred while a naturalized citizen, should not require removal. The Board denied the motion. Because an alien may file only one motion to reopen and must file it within 90 days of the final order of removal, the Board found that Rayes's third motion was both number-barred and time-barred. *See* 28 U.S.C. § 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.2(c)(2). It also denied Rayes's request for equitable tolling premised on a change in law given all of the time—roughly eight years—that had passed since the Board's final decision.

II.

On appeal, Rayes accepts the untimeliness of his motion to reopen but claims that the Board should have accepted it based on equitable tolling. Rayes bears the burden of demonstrating that he is entitled to equitable tolling, a form of relief frequently requested but infrequently granted. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). He must show that he acted with due diligence in pursuing his rights and that extraordinary circumstances prevented his timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010); *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008). Because even "intervening developments in the law . . . rarely constitute [] extraordinary circumstances," this showing requires "some other special circumstance" beyond "an applicable change in decisional law" to warrant relief. *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) (quotation omitted); *see Njai v. Garland*, 2022 WL 2903443, at *5–6 (6th Cir. July 22, 2022). We review the Board's denial of equitable tolling for abuse of discretion. *Camaj v. Holder*, 625 F.3d 988, 991 (6th Cir. 2010).

The first problem for Rayes turns on the sheer length of the delay he asks us to overlook. By statute, a petitioner has 90 days to file one motion to reopen with the Board. 28 U.S.C. § 1229a(c)(7)(C)(i). That statutory regime is designed to bring finality to the process for challenging removal, what the Supreme Court has referred to as a "strong public interest in bringing litigation to a close." *INS v. Abudu*, 485 U.S. 94, 107 (1988). In this instance, Rayes asks permission to file a third motion to reopen nearly seven-and-a-half years after the initial window closed. That would be a heavy lift even if he remained in the country, which he does not. *Cf. Holder v. Martinez Gutierrez*, 566 U.S. 583, 594 (2012). A final order of removal must become final at some point. That point was reached some time ago.

The second problem for Rayes is that his explanation for excusing this lengthy delay to bring a third motion—new legal authority—does not in this instance establish the kind of extraordinary circumstance that would justify equitable tolling. Petitioners have twice asked the Sixth Circuit to allow untimely motions to reopen based on new caselaw, and we have twice declined to do so. *See Hernandez v. Bondi*, 2025 WL 943710, at *2 (6th Cir. Mar. 28, 2025) (reasoning that, "[e]ven assuming" that intervening precedent "was an exceptional circumstance," the alien failed to show due diligence and therefore was not entitled to equitable tolling); *Njai*, 2022 WL 2903443, at *6 (denying equitable tolling because the petitioner did not exercise due diligence). We need not decide today when, if ever, a change in law amounts to the kind of extraordinary circumstance that would equitably toll the statutory deadline to file a motion to reopen because the seeds of this argument were in existence well before Rayes filed his third motion.

The key decision in this area is *Costello v. INS*. 376 U.S. 120 (1964). It held that "[a]ny alien" who "is convicted of two crimes involving moral turpitude" does not apply to an alien who,

4

at the time of his conviction, was a citizen. *Id.* at 121 (quoting 8 U.S.C. § 1251(a)(4) (1964 ed.)). The Court reached this conclusion based on the relevant statute's use of the present tense, its lack of a date limitation, and the rule of lenity. *Id.* at 126–28. For our purposes, the key point is that this reasoning appeared in the U.S. Reports 50 years before Rayes's final removal hearing before an immigration judge. As he correctly acknowledged in his third motion to reopen, that decision was "longstanding." R.6-2 at 25. And as he showed in his second motion to reopen, he knew how to use *Costello* because he invoked it as a ground for relief. Nothing, in short, prohibited Rayes from arguing in his first motion to reopen within 90 days of the Board's decision that he should not be removed based on a felony conviction he incurred while a citizen.

A similar problem undermines his reliance on three out-of-circuit cases. As an initial matter, neither we, nor apparently Rayes, are aware of any authority directing the Board to grant equitable tolling based on out-of-circuit precedents. But even if we overlooked that point, Rayes would run headlong into a hurdle of his own making. These out-of-circuit precedents came down between November 2018 and August 2021. *See Singh v. Attorney General*, 12 F.4th 262 (3d Cir. 2021); *Okpala v. Whitaker*, 908 F.3d 965 (5th Cir. 2018); *Hylton v. Attorney General*, 992 F.3d 1154 (11th Cir. 2021). Rayes did not file his third motion to reopen until October 2024, over three years from the most recent of those precedents. Given that a delay of even three months can doom a bid for equitable tolling, Rayes's three-year (at a minimum) delinquency in filing after these intervening decisions severely undercuts his claim of diligence. *Barry*, 524 F.3d at 725; *see also Hernandez*, 2025 WL 943710, at *2 (no equitable tolling because alien delayed filing "for another 12 months" after purported change in law); *Slyusar v. Barr*, 787 F. App'x 309, 315 (6th Cir. 2019) (no equitable tolling because alien delayed filing "for over three years").

Nor does the pending existence of *Castillo v. Bondi* in the Sixth Circuit at the time of his motion fix the problem. 140 F.4th 777 (6th Cir. 2025). To the extent that a change in law (plus some other special circumstance) qualifies as an extraordinary circumstance, that change must mark "a reversal of established adverse precedent." *GenCorp*, 477 F.3d at 374. No such reversal occurred. Before *Castillo*, the Sixth Circuit had not considered whether an "alien who is convicted" of a crime included denaturalized aliens who had been citizens at the time of their conviction. *See* 8 U.S.C. § 1227(a)(2)(A)(i)–(iv). Although a "party faced with a hoary precedent [] might be forgiven for not challenging it," Rayes "faced no obstacle that would have prevented fresh review" of the denaturalization issue on appeal. *GenCorp*, 477 F.3d at 374. The Board did not abuse its discretion in finding that Rayes failed to establish the kind of extraordinary circumstances that would justify an eight-year delay in filing his third motion to reopen.

Rayes challenges this conclusion on three grounds, each unavailing. He first argues that the Board's precedent in *Matter of Gonzalez-Muro*, 24 I. & N. Dec. 472 (B.I.A. 2008) (per curiam), foreclosed his challenge to removability based on his citizen status at the time of the conviction. *Gonzalez-Muro*, it is true, permitted the removal of denaturalized aliens convicted of crimes while a citizen. 24 I. & N. Dec. at 473. But *Gonzalez-Muro* does not bind the Sixth Circuit, and Rayes's decision not to appeal the Board's final order of removal prevented us from assessing *Gonzalez-Muro*. Rayes instead opted to request that the Board reopen his case, resting his argument on potential persecution in Iraq, not his naturalized status at the time of the crime.

Rayes next claims that *Williams v. Garland*, 59 F.4th 620 (4th Cir. 2023), supports his request for equitable tolling. The Fourth Circuit, it is true, found that Williams was diligent in filing a motion to reopen following a change in law. *Id.* at 643. But the similarities between this case and *Williams* show, if anything, Rayes's lack of diligence. Williams, like Rayes, was

6

removed; Williams, like Rayes, filed a facially untimely motion to reopen; Williams, like Rayes, argued that equitable tolling should apply because of an intervening change in law. *See id.* at 624. Yet Williams, unlike Rayes, moved to reopen a year after the favorable change in law and could justify even that delay given his total lack of access to the internet. *See id.* at 641–42. Compare that to Rayes's three-year delay (at a minimum) and limited but demonstrated access to the internet. Rayes thus has a greater delay to excuse and less cause to excuse that delay.

Rayes finally argues that the Board abused its discretion by failing to reopen his removal proceedings under its so-called "*sua sponte* authority." *Guzman-Torralva v. Bondi*, 154 F.4th 880, 884 (6th Cir. 2025). The Board's power to engage in *sua sponte* reopening derives from its own regulation. *See* 8 C.F.R. § 1003.2(a). This same regulation grants the Board "discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief." *Id.* Because the Board has "unfettered discretion" whether to invoke its *sua sponte* authority, its decision not to do so is "not subject to judicial review." *Herrera v. Bondi*, 162 F.4th 617, 622 (6th Cir. 2025) (quotation omitted). This challenge thus also fails.

For these reasons, we deny the petition for review.